# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

**MIRROR LAKE VILLAGE, LLC**
836 SW 312th Street,
Federal Way, WA 98023-4515

**Yanxue DENG**
No, 203, Jiahua Yinxiang Community
Room 1101, Unit 2
Tongzhou District, Beijing

**Hui GE**
West 6-4, Baoli Shi'er Xiangshu Zhuangyuan
560 North Tangxunhu Road
Wuhan, Hubei, China

**Lei HU**
6-2-401, Chongwen, Macheng Road
Apartment, 36
Xihu District, Hanzhou, Zhejiang, China

**Ge LI**
Muxidi Beili, Room 603, Building Bing-4
Xicheng District, Beijing, China

**Zhichun LI**
No. 2 Daliushu Road
Room 141, East Building 3
Haidian District, Beijing, China

**Ying SU**
Shanghai Civil Aviation College,
246 Yunjin Road, Floor 10, Admin. Bldg.
Xuhui Dist, Shanghai, China

**Yue WANG**
3#1904, Fuze Yuan
Yihai Huayuan
Fengtai District, Beijing, China

*Plaintiffs*

v.

)
)
)
)
)
)
)
)
)
)
)   Civil No.:_____
)
)
)
)
)
)
)   **COMPLAINT FOR**
)   **DECLARATORY JUDGMENT**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Jeh Charles JOHNSON,** Secretary )
U.S. Department of Homeland Security )
3801 Nebraska Ave., NW )
Washington, DC 20016 )
                                                      )
**Leon RODRIGUEZ** Director, )
U.S. Citizenship and Immigration Services )
20 Massachusetts Ave., NW )
Washington, DC 20529 )
                                                      )
**Nicholas COLUCCI,** Chief )
Immigrant Investor Program )
U.S. Citizenship and Immigration Services; )
131 M Street, NE )
Washington, DC 20529 )
                                                      )
          ***Defendants.*** )
_____ )

## PLAINTIFFS' COMPLAINT
## FOR DECLARATORY JUDGMENT

Plaintiffs, by and through their undersigned attorneys, commence this action against the

above-named Defendants, and state as follows:

1.        This action is brought against the Defendants for declaratory judgment and review of an

agency action under the Administrative Procedures Act based on the Defendants'

unlawful denial of the I-526 Petitions for Alien Entrepreneur of Plaintiffs Deng, Ge, Hu,

Li, Li, Su and Wang (the "Investor Plaintiffs"), and corresponding Motions to Reopen

and Reconsider those denials.   The Investor Plaintiffs filed I-526 petitions to seek

immigrant visas under the employment-based fifth category of the Immigration and

Nationality Act ("INA") — which allows foreign nationals who invest at least $500,000

into a new commercial enterprise in the U.S., and whose investment results in the

creation of at least ten jobs for U.S. workers, to obtain conditional and then unconditional

lawful permanent resident status, on the basis of their investment of $500,000 each into

Mirror Lake Village, LLC.  Although the Investor Plaintiffs' $500,000 investments are not guaranteed and are fully at risk of loss, Defendants denied the petitions on the basis that the investments were not "at-risk" because a provision of the governing agreement provided the Investor Plaintiffs with a right to require that Mirror Lake Village, LLC repurchase their interests, contingent on Mirror Lake Village, LLC having sufficient cash to do so,  at a time after the Investor Plaintiffs have obtained unconditional lawful permanent residence through the EB-5 program.

## PARTIES

2.   Plaintiff, Mirror Lake Village, LLC, is a Washington limited liability company formed to be a qualifying New Commercial Enterprise under the EB-5 program regulations and to use the proceeds of the Investor Plaintiffs' $500,000 investments in the company to develop and operate a senior living community in Federal Way, Washington.

3.   Plaintiff, Yanxue Deng, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

4.   Plaintiff, Hui Ge, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

5.   Plaintiff, Lei Hu, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

6.  Plaintiff, Ge Li, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

7.  Plaintiff, Zhichun Li, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

8.  Plaintiff, Ying Su, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

9.  Plaintiff, Yue Wang, is a native and citizen of the People's Republic of China, who filed an I-526 petition for Alien Entrepreneur with Defendant USCIS on the basis of a $500,000 investment into Mirror Lake Village, LLC, which was ultimately denied.

10. Defendant, Jeh Johnson, is the Secretary of the United States Department of Homeland Security ("DHS"), with responsibility for the administration of applicable laws and statutes governing immigration and naturalization. He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of DHS. More specifically, the Secretary is responsible for the adjudication of petitions for alien entrepreneurs.

11. Defendant, Leon Rodriguez, is the Director of U.S. Citizenship and Immigration Services ("USCIS"), and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include: adjudication of immigrant visa petitions and applications for adjustment of status; adjudication of naturalization petitions; adjudication of asylum and

refugee applications; adjudications performed at USCIS service centers, and all other adjudications performed by USCIS.

12. Defendant, Nicholas Colucci, is the Chief of the USCIS Immigrant Investor Program Office, which is directly charged with responsibility for processing applications and petitions under the EB-5 program, and specifically petitions for alien entrepreneurs.

13. Defendant, U.S. Citizenship and Immigration Services ("USCIS") (formerly, the Immigration and Naturalization Service) is an agency of the federal government within the Department of Homeland Security (formerly, within the U.S. Department of Justice) and is responsible for the administration of laws and statutes governing immigration and naturalization and the adjudication of petitions for immigration benefits, including petitions for alien entrepreneurs.

## JURISDICTION

14. Jurisdiction in this case is proper under 28 U.S.C. § 1331, 5 U.S.C. §§ 701 and 702 *et. seq.*, and 28 U.S.C. § 2201 *et. seq.* Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, 702 et seq., and § 706(1).

## VENUE

15.   Venue properly lies within this district pursuant to 28 U.S.C. § 1391(e), in that this is an

action against officers and agencies of the United States in their official capacities,

brought in the District where a Defendant in the action resides. Defendants, Johnson,

Rodriguez, Colucci, and USCIS all have offices located in Washington, D.C.

## EAJA FEES

16.   In connection with the claim for attorneys' fees and costs, under the Equal Access to

Justice Act, 28 U.S.C. § 2412, Plaintiffs seek to recover costs and attorneys' fees incurred

in bringing this action.  Plaintiffs are obligated to pay reasonable attorneys' fees and costs

incurred in the prosecution of this cause.

## EXHAUSTION OF REMEDIES

17.   Plaintiffs have exhausted their administrative remedies. The denial of the I-526 Petitions

and Motions to Reopen constitute a final administrative action in this matter.

## INTRODUCTION TO THE EB-5 VISA PROGRAM

18.   In 1990, Congress amended the Immigration and Nationality Act of 1965, allocating,

inter alia, 10,000 immigrant visas per year to foreign nationals seeking Lawful Permanent

Resident ("LPR") status on the basis of their capital investments in the United States. *See*

*generally* the Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978

(1990) (codified at 8 U.S.C. § 1153(b)(5)).  Pursuant to the so-called "Immigrant Investor

Program," foreign nationals may be eligible for an employment-based, fifth preference

("EB-5") immigrant visa if they have invested, or are actively in the process of investing,

$1 million (or $500,000 in a high unemployment or rural area) in a qualifying New

Commercial Enterprise ("NCE"), and that investment results in the creation of at least ten

jobs for U.S. workers. *See* 8 U.S.C. § 1153(b)(5)(A)-(D); *see also* 8 C.F.R § 204.6(a)-(j). The EB-5 regulations further provide that, in order to qualify as an "investment" in the EB-5 Program, foreign nationals must actually place their capital "at risk" for the purpose of generating a return, and that the mere intent to invest is not sufficient. *See* 8 C.F.R. § 204.6(j)(2). The purpose of this program was to promote foreign direct investment into, and job creation within, the U.S.

19.  To become an LPR through the program, a foreign national must initially file with USCIS a Form I-526 Immigrant Petition by Alien Entrepreneur, which, if approved, makes the foreign national eligible to receive an employment-based, fifth preference immigrant visa. *See generally* 8 U.S.C. § 1153(b)(5). Upon approval of the I-526 Petition, the foreign national must file a Form I-485, Application to Adjust Status (if he or she is located in the United States), or a Form DS-230, Application for Immigrant Visa and Alien Registration (if he or she is located outside the United States). *See generally* 8 U.S.C. § 1201 (provisions relating to the issuance of entry documents); 8 U.S.C. § 1255 (provisions relating to adjustment of status). Upon adjustment of status or admission on an EB-5 immigrant visa, the foreign national is granted two years of conditional permanent resident status, provided that the foreign national is not otherwise ineligible for admission into the United States. *See generally* 8 U.S.C. § 1182 (provisions relating to excludable aliens). Finally, at the conclusion of the two-year conditional period, the foreign national must file a Form I-829, Petition to Remove the Conditions on his or her LPR status. If the foreign national has fulfilled the EB-5 requirements — i.e. has invested, maintained the investment at risk, and the investment has resulted in the creation of at least ten jobs for U.S workers — then the conditions will be removed and

the foreign national will become an unconditional LPR.  *See generally* 8 U.S.C. § 1186b

(provisions relating to conditional permanent resident status for certain alien

entrepreneurs, spouses, and children).

## FACTUAL ALLEGATIONS

20.  Mirror Lake Village, LLC was formed in the State of Washington on November 15,

2013.

21.  Because it is a new business formed after November 29, 1990, it qualifies as a New

Commercial Enterprise under the EB-5 regulations at 8 C.F.R. § 204.6.

22.  Mirror Lake Village, LLC was formed for the purposes of aggregating the investments of

seven EB-5 investors (plus potentially an additional two EB-5 investors to be identified at

a later time) and two or more non-EB-5 investors to fund the development and operation

of a senior living community in Federal Way, Washington, which will offer a continuum

of care options on its campus, including independent living, assisted living, and memory

care assisted living. Mirror Lake Village is expected to encompass a total of three

buildings and nine semi-detached villas situated across 3.24 acres of land, and will

include 48 assisted living units, 32 memory care units, and 18 independent living units.

The memory care and assisted living units will be offered in studio, one bedroom, and

one bedroom deluxe formats, and the independent living units will be offered as two

bedroom duplexes.  Furthermore, on-site nursing care will be available to Mirror Lake

Village residents, and the campus will include a Community Center that features luxury

and casual dining restaurants, activities and exercise rooms, a movie theatre, and a

medical/wellness center.

23. At the time of filing the I-526 petitions, the Mirror Lake Village project was expected to cost approximately $29.06 million, and be funded with $3.5 million in investments by the Investor Plaintiffs, $5 million from a single Chinese investor, $250,000 from Washington Clangston Investment Group (the Manager of Mirror Lake Village, LLC), and approximately $20.31 million of senior debt (numbers are approximate and may not equal the total estimated cost).

24. The Mirror Lake Village Project is expected to create a minimum of 74 new, full-time, permanent jobs for U.S. workers — or at least 10 jobs per EB-5 investor.

25. All $3.5 million of the Investor Plaintiffs' funds have been used in the construction of the project or to repay bridge financing that was used in the construction of the project.

26. On information and belief, at this point, the project is partially built.  Infrastructure and underground work has been completed, roads have been installed, the parking garage is close to completion, and the first floor of Building A has been framed out.  The company anticipates obtaining bank financing for the remainder of the construction imminently.

27. The Operating Agreement and Offering Memorandum provide that the Company must use reasonable efforts to return the investors' capital if their I-526 petitions are denied. However, all of the Investor Plaintiffs' funds have been expended, and the Company lacks the resources to repay the investors at the moment.

28. The Investor Plaintiffs all invested into Mirror Lake Village, LLC with the intent of qualifying for an EB-5 visa on the basis of that investment, and obtaining lawful permanent resident status in the U.S. for themselves, their spouses, and their minor children.

29.   The ability to obtain a "green card" through this investment was a primary motivating factor for all the Plaintiff Investors in deciding to make their investments.

    **i.**    **Procedural History**

30.   Plaintiff, Yanxue Deng is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on June 26, 2014.

31.   On November 4, 2014, Plaintiff Deng filed an I-526 petition, receipt number WAC1590043198, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

32.   On December 30, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Plaintiff Deng.

33.   On January 28, 2016, Plaintiff Deng, through counsel, submitted a response to the NOID to Defendants.

34.   On February 12, 2016, Defendants denied Plaintiff Deng's I-526 petition.

35.   Plaintiff Deng, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690366040.

36.   On June 13, 2016, Defendants denied Plaintiff Deng's Motion.

37.   Plaintiff, Hui Ge, is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on June 23, 2014.

38.   On October 28, 2014, Plaintiff Ge filed an I-526 petition, receipt number WAC1590033077, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

39.   On December 29, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Plaintiff Ge.

40.     On January 28, 2016, Plaintiff Ge, through counsel, submitted a response to the NOID to Defendants.

41.     On February 9, 2016, Defendants denied Plaintiff Ge's I-526 petition.

42.     Plaintiff Ge, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690363728.

43.     On May 12, 2016, Defendants denied Plaintiff Ge's Motion.

44.     Plaintiff, Lei Hu, is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on June 23, 2014.

45.     On November 10, 2014, Plaintiff Hu filed an I-526 petition, receipt number WAC1590051680, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

46.     On December 30, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Plaintiff Hu.

47.     On January 28, 2016, Plaintiff Hu, through counsel, submitted a response to the NOID to Defendants.

48.     On February 16, 2016, Defendants denied Plaintiff Hu's I-526 petition.

49.     Plaintiff Hu, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690363726.

50.     On June 14, 2016, Defendants denied Plaintiff Hu's Motion.

51.     Plaintiff, Ge Li, is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on June 26, 2014.

52.    On October 20, 2014, Plaintiff Ge Li filed an I-526 petition, receipt number WAC1590022847, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

53.    On December 29, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Ge Li.

54.    On January 28, 2016, Ge Li, through counsel, submitted a response to the NOID to Defendants.

55.    On February 9, 2016, Defendants denied Plaintiff Ge Li's I-526 petition.

56.    Plaintiff Ge Li, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690363571.

57.    On June 14, 2016, Defendants denied Plaintiff Ge Li's Motion.

58.    Plaintiff, Zhichun Li, is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on March 26, 2014.

59.    On October 16, 2014, Plaintiff Zhichun Li filed an I-526 petition, receipt number WAC1590019153, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

60.    On December 22, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Plaintiff Zhichun Li.

61.    On January 22, 2016, Plaintiff Zhichun Li, through counsel, submitted a response to the NOID to Defendants.

62.    On February 11, 2016, Defendants denied Plaintiff Zhichun Li's I-526 petition.

63.    Plaintiff Zhichun Li, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690363727.

64. As of this date, Plaintiff Zhichun Li's motion is still pending. It is expected that Defendants will deny this motion on the same basis as they denied all the others.

65. Plaintiff, Ying Su, is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on June 27, 2014.

66. On November 10, 2014, Plaintiff Su filed an I-526 petition, receipt number WAC1590051643, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

67. On December 30, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Plaintiff Su.

68. On January 28, 2016, Plaintiff Su, through counsel, submitted a response to the NOID to Defendants.

69. On February 11, 2016, Defendants denied Plaintiff Su's I-526 petition.

70. Plaintiff Su, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690368475.

71. On June 14, 2016, Defendants denied Plaintiff Su's Motion.

72. Plaintiff, Yue Wang, is a native and citizen of the People's Republic of China, who invested $500,000 into Mirror Lake Village, LLC on June 27, 2014.

73. On November 4, 2014, Plaintiff Wang filed an I-526 petition, receipt number WAC1590043202, with Defendants on the basis of this investment into Mirror Lake Village, LLC.

74. On December 30, 2015, Defendants issued a Notice of Intent to Deny ("NOID") the I-526 petition to Plaintiff Wang.

75. On January 28, 2016, Plaintiff Wang, through counsel, submitted a response to the NOID to Defendants.

76. On February 10, 2016, Defendants denied Plaintiff Wang's I-526 petition.

77. Plaintiff Wang, through counsel, filed an I-290B Motion to Reopen and Reconsider with Defendants on March 14, 2016, with receipt number WAC1690363729.

78. On May 23, 2016, Defendants denied Plaintiff Wang's Motion.

**ii.      The I-526 Denials**

79. The Investor Plaintiffs all filed I-526 petitions based on their investments in Mirror Lake Village, LLC in October and November of 2014.

80. Each of the Investor Plaintiff's I-526 petitions contained a cover letter and exhibits. A portion of the cover letter and exhibits detailed each investor's lawful source and path of funds and required biographical information. While the portion of the I-526 petition for each of the investors varied, the portion of the cover letter and exhibits relating to the investment into the NCE and the project was identical for each investor.

81. In December 2015, Defendants issued NOIDs to all Investor Plaintiffs.

82. The NOIDs appear to be identical except for the date of issuance, the name of the Petitioner, the receipt number, and the relevant procedural dates.

83. In the NOIDs, Defendants raised a single issue.

84. The NOIDs allege that because the Operating Agreement and Offering Memorandum for Mirror Lake Village, LLC provide the Plaintiff Investors with a Put Option, or a right to compel the company to purchase their interests at one of two points (final adjudication of their I-829 petition or the second anniversary of the final adjudication of the I-829 petition of each investor), the Investor Plaintiffs have not made a qualifying investment

14

into the company, but rather have entered into a "debt arrangement" that does not qualify as an "investment" under the regulations because the investment is not at risk.

85.   Although the NOIDs quote the Put Option language from the Operating Agreement and Offering Memorandum, they specifically omit language from the relevant provisions that makes the company's obligation to purchase an investor's interest upon exercising the Put Option **expressly contingent** on the availability of sufficient cash flow.

86.   The Investor Plaintiffs all filed responses to the NOID in January of 2016.  Each response was substantively identical to the others.

87.   In the response, the Investor Plaintiffs argued that because the Put Option is expressly contingent on the availability of sufficient cash flow (a fact not acknowledged in the NOIDs), there is no unconditional contractual obligation for the company to purchase the Investor Plaintiffs' interests on demand, and therefore, their investments are properly equity investments and not a debt arrangement.

88.   The Investor Plaintiffs further argued that because their ability to obtain a return on or of capital is entirely subject to business fortunes, their investments are properly at risk as required by the statute and regulations.

89.   The Investor Plaintiffs also argued that although the statute and regulations require the investment to be maintained, at risk, throughout the conditional residence period, neither the statute nor the regulations require an investment to be of an indefinite term to qualify as an EB-5 investment.  Because the Put Option gives the investors a right to exit the investment, subject to the company's ability to pay, only *after* the conditional residence period—when they are no longer subject to the EB-5 requirements—the Put Option does

not prevent their investments from being qualifying at-risk investments for the purposes of the EB-5 program.

90. Finally, the NOID response explained in great detail why *Matter of Izummi*, 22 I&N Dec. 169 (Assoc. Comm. 1998), the precedent administrative decision cited by Defendants in the NOID, does not prohibit the type of arrangement present in this case.

91. Notwithstanding the NOID responses filed by the Investor Plaintiffs, Defendants denied all of the I-526 petitions in February 2016.

92. Although it took Defendants an average of 13-14 months from the time the I-526 petitions were filed, the denials were issued in as little as 12 days after the NOID response were filed.

93. The denials of the Investor Plaintiffs' I-526 petitions are essentially identical, other than their names, receipt numbers, and procedural dates.

94. The denials raise only the issue of the Put Option, and assert no other grounds for the denial of the petitions.

95. On information and belief, this signifies that there are, in fact, no other issues in controversy in the Investor Plaintiffs' I-526 petitions.

96. In the denials, Defendants allege that notwithstanding the fact that the Put Option is expressly contingent on the financial ability of the company to purchase an investor's interest upon an exercise of that option, the investment is "in exchange for a redemption agreement [and] is not properly 'invested' and is not 'at risk.'" Decision at 6.

97. The denial appears to state that the profitability of the company (i.e., the company's ability to repay the investors and the corresponding investment risk) is simply not relevant to the decision.

### iii.    The Motions to Reopen and Reconsider

98.    In response to the denial of their I-526 petitions, the Investor Plaintiffs all filed timely

Motions to Reopen and Reconsider with Defendants on or about March 15, 2016.

99.    Once again, the Motions were essentially identical, but for certain investor specific

procedural details.

100.    The Motions argued that the Investor Plaintiffs' investments are at risk because the Put

Option does not guarantee that their interests will be purchased at a certain time, or a

certain price, or at all.  The motions further argued that the investments did not constitute

a loan because the investments were made in exchange for a Limited Liability Company

interest, with a right to a share of the profits and losses, and the right to vote on certain

issues, and not made in exchange for a note, bond, or other type of debt instrument

between the investors and the company.

101.    The motions described how, given the current visa backlog for natives of the People's

Republic of China in the EB-5 category, it is unlikely that the Plaintiff Investors would

become conditional permanent residents before sometime in 2018.   The conditional

residence period does not start to run until an EB-5 investor becomes a conditional

resident.  The conditional residence period does not end until the final adjudication of the

investor's I-829 petition.  The I-829 cannot be filed until 21 months after the investor

becomes a conditional resident.  USCIS processing times for an I-829 petition, at the time

the motions were filed, was 16.2 months (they are now over 18 months and rising).  Thus,

the motions argued that the earliest point at which the Put Option could be exercised by

the Investor Plaintiffs would be at some time in 2022, or 8 years after making an

investment.   As such, the company would have to continue to exist and operate

successfully for at least 8 years in order to have sufficient cash flow to repay the investors.

102.  The motions also presented evidence relating to the risk of failure for start-up businesses in the U.S.  Depending on how failure is defined, start-up businesses have a rate of failure of between 30-40% and 95%.

103.  As such, the Motions argued that the Plaintiff Investors' investments were very clearly at risk, and the Put Option does not provide any kind of guarantee that the company will repurchase their interests.

104.  Defendants denied six of the seven motions in May and June 2016.  Only Plaintiff Zhichin Li's motion remains adjudicated.

105.  All of the decisions appear substantially identical.

106.  The denials of the Motions found that the Motions did not present any new facts, and the "documentary evidence concerning the Department of State visa availability and documentary evidence concerning small business viability are not relevant to establishing the [Investor Plaintiffs'] capital [is] at risk in the NCE." Motion Denial at 3.

107.  The Motion Denials state that the Motions did not establish that the previously issued denial was an incorrect application of the law or USCIS policy.

108.  The Motion Denial states that "guaranteed returns to an investor do not qualify for the purpose of being at risk under the applicable regulations.  [] Thus, if an immigrant investor is guaranteed the return of a portion of his or her investment, then the amount of such guaranteed return is not at risk." Motion Denial at 4.  The denial notes that the previous decision found that the "evidence in the record failed to establish that the

investor has placed the required minimum amount of capital at risk for the purposes of generating a return in accordance with applicable law." *Id.* at 4-5.

109.   The denial also found that in spite of the additional evidence, the Investor Plaintiffs failed to demonstrate that they had placed the required amount of capital at risk in accordance with applicable law.

110.   Regarding the Investor Plaintiffs' arguments that the investments are clearly at risk because the Put Option is expressly contingent on the company having cash available to purchase their interests, the denial cites to the AAO's rejection of an argument by counsel in *Matter of Izummi* in which the attorney argued that the funds were at risk notwithstanding an explicit, unconditional, contractual promise to repay the investors because of the risk that the company might choose not to honor that agreement in violation of its fiduciary duty to its investors.  The denial then followed this logic to find that the risk of nonpayment to the Investor Plaintiffs that could occur as a result of normal business risks (i.e., insufficient cash flow) did not prevent the Put Option from resulting in a prohibited redemption agreement.

## CLAIMS

111.   Factual allegations contained in paragraphs 1 through 110 are repeated and incorporated herein.

112.   The denial of the Investor Plaintiffs' I-526 petitions is an agency action under the APA.

113.   The Investor Plaintiffs have suffered a legal wrong and have been adversely affected or aggrieved by the denial of their I-526 petitions.

114.   Plaintiff, Mirror Lake Village, LLC has suffered a legal wrong and has been adversely affected or aggrieved by the denial of the Investor Plaintiffs' I-526 petitions, in that

Mirror Lake Village, LLC is required to use reasonable efforts to return the Investor Plaintiffs' investment funds if their I-526 petitions are denied.

115.   Plaintiff, Mirror Lake Village, LLC is within the zone of interests contemplated by the INA, which contemplates EB-5 investors making an investment into a New Commercial Enterprise, such as Mirror Lake Village, LLC, and that enterprise using the investment finds for a for-profit business activity.  Mirror Lake Village, LLC, as a New Commercial Enterprise, is the intended target under the INA for EB-5 investment, and as a result, it has standing to bring this action pursuant to 5 U.S.C. § 702.

116.   Relief is available to Plaintiffs pursuant to the APA and 28 U.S.C. § 2201.

117.   Because USCIS processing times, immigrant visa processing times, and the EB-5 visa backlog for natives of the People's Republic of China are all uncertain and subject to variation, Plaintiffs have no way of knowing when the Investors Plaintiffs will become conditional residents, file an I-829 petition, or have a final adjudication of that petition. As such, they cannot know when the exercise of the Put Option might be possible, and there is no agreement to purchase their interests at a certain time.

118.   Because the Mirror Lake Village project is not fully built, not operating, and is subject to normal business risks once operating, there is no way to know if there will be any cash flow, let alone sufficient cash flow to purchase the interests of investors who exercise the Put Option.

119.   The Put Option does not constitute an unconditional, contractual promise to repay the investors and does not shift the investment risk from the investors to the company.

120.   The Investor Plaintiffs have made an equity investment, and that investment is at risk of partial or total loss, depending on the success of the Mirror Lake Village business.

121.   The Investor Plaintiffs have unquestionably made an investment that is "at risk."

     **i.**     **Defendants misinterpreted and misapplied the law in denying the Investor Plaintiffs' I-526 petitions and Motions to Reopen/Reconsider**

122.   Factual Allegations contained in Paragraphs 1 through 110 are repeated and incorporated herein.

123.   Defendants base their denial of the Investor Plaintiffs' I-526 petitions and Motions to Reopen and Reconsider on their administrative precedent decision, *Matter of Izummi.* However, they have substantially misinterpreted that decision and misapplied it to the facts of this case.

124.   Defendants have erroneously denied the Investor Plaintiffs' I-526 petitions and Motions to Reopen and Reconsider.

125.   Defendants' decision that the Investor Plaintiffs are not eligible to have their I-526 petitions approved because their investments are not "at risk" is arbitrary, capricious, and erroneous as a matter of law.

126.   Defendants' decision is contrary to the regulations and statutes governing the EB-5 program.

127.   Defendants' factual findings are clearly erroneous and not supported by the record.

     **ii.**     ***Matter of Izummi* is *ultra vires* and creates requirements that are not present in, or consistent with, the statute and regulations, and the Investor Plaintiffs' I-526 petitions were improperly denied on the basis of these requirements.**

128.   Factual Allegations contained in Paragraphs 1 through 110 are repeated and incorporated herein.

129.   Defendants rely heavily on *Matter of Izummi* in denying the Investor Plaintiffs' I-526 petitions.  However, *Izummi* arbitrarily creates a requirement that an EB-5 investor enter

into an investment agreement that has an indefinite term, and does not allow the investor a right to exit the investment at any time, despite the fact that the applicable statute and regulations only require an EB-5 investor to maintain his or her investment through the conditional residence period.

130.   *Izummi* also arbitrarily and capriciously ignores factors applied in other areas of law, such as tax and corporate law that are used to determine whether an investment is in the nature of debt or equity in defining a "debt arrangement."

131.   *Izummi* arbitrarily and capriciously compares an investor who wishes to be able to exit an investment at some point after all the EB-5 requirements are satisfied (i.e., investment in a new commercial enterprise, maintaining the investment at risk throughout the conditional period, creating at least 10 full-time, permanent jobs for U.S. workers), and after the conditional residence period, to someone who commits marriage fraud for the purposes of obtaining an immigration benefit. *See Izummi*, 27 I&N Dec. at 186 ("To enter into a redemption agreement at the time of making an 'investment' evidences a preconceived intent to unburden oneself of the investment as soon as possible after unconditional permanent resident status is attained. This is conceptually no different from a situation in which an alien marries a U.S. citizen and states, in writing, that he will divorce her in two years. The focus here is on the green card and not on the business.").

132.   Because of *Izummi's* expansive and *ultra vires* interpretation of "at risk" and "debt arrangement," EB-5 investors are forced into investments that are *riskier*, rather than simply *at risk*, because they are not allowed to enter into an investment that gives them the right to exit at any time.  Therefore, they are subject to risks long after the investment has created at least ten full-time, permanent jobs and the conditional residence period is

over, because, under *Izummi*, they can have no right to force the company to purchase their interests at a set time, or upon a set event.  Prohibiting an investment agreement from containing an exit strategy for investors results in agreements that are not standard in the investment industry, because this would be a deterrent for many investors.

133.   The agreement at issue in *Izummi* was unique, and represented an attempt to evade the requirements of the EB-5 program by allowing an investor to make a partial investment with a guaranteed return and fund the rest of the investment over time, provided that the company did not default on paying the guaranteed return.  If the company failed to pay the return, the investor was not required to invest the funds, and might end up investing less than the required minimum investment.  While *Izummi* properly held that this type of arrangement does not qualify as an at-risk investment, its broader holding creates limitations that are not present in INA §§ 203(b)(5) and 216A, or 8 C.F.R. §§ 204.6 and 216.6.  As such, *Izummi* should be overruled entirely, or else limited to its specific facts.

## PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs respectfully pray that the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order:

1.  Reversing Defendants' denials of Plaintiffs' I-526 Petitions;

2.  Reversing Defendants' denials of Plaintiffs' motions to reopen and reconsider;

3.  Awarding reasonable attorney's fees; and

4.  Granting such other relief at law and in equity as justice may require.

Respectfully submitted this 30th day of September 2016,

By counsel, _____

Thomas K. Ragland
D.C. Bar No. 501021
Clark Hill, PLC
601 Pennsylvania Ave., N.W.
North Building, Suite 1000
Washington, DC 20004
T: (202) 552-2360
F: (202) 552-2384 Fax
E: tragland@clarkhill.com